**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICHAEL MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01660-TWP-DML |
| ) | |
| OFFICER BRAD ALFORD, CITY OF ) | |
| INDIANAPOLIS and OFFICER JASON RAUCH, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Officer Brad Alford ("Officer Alford"), Officer Jason Rauch ("Officer Rauch"), and the City of Indianapolis ("the City") (collectively, "Defendants") Motion for Summary Judgment. Plaintiff Michael Murphy ("Mr. Murphy") brought this suit against the Defendants alleging violations of 42 U.S.C. § 1983 by Officer Alford's and Officer Rauch's unreasonable seizure and use of excessive force, failure to intervene by Officer Rauch, and state law claims for battery and false arrest against the City (Dkt. 50). Defendants deny all claims and seek summary judgment. For the reasons set forth below, Defendants' Motion (Dkt. 74) is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

The following statement of facts are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Murphy as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

On January 15, 2011, at approximately 8:25 p.m., Officer Alford was sitting in his police car in Indianapolis, Indiana using his radar device to detect speeding vehicles. Officer Alford

observed Mr. Murphy talking on a cellphone while driving his vehicle. Officer Alford's radar measured Mr. Murphy's vehicle as traveling fifty-four miles per hour in a forty miles per hour zone. Once Mr. Murphy's vehicle drove past him, Officer Alford pulled onto the road and began following Mr. Murphy. Mr. Murphy noticed a car following him closely and two blocks later, while making a left hand turn at an intersection, Mr. Murphy saw the overhead lights of a police car behind him. Mr. Murphy then pulled his vehicle into a Shell gas station located at the intersection and attempted to pull into a parking space. Officer Alford sounded his siren and ordered Mr. Murphy to stop the vehicle, which Mr. Murphy did. Officer Rauch was approaching the intersection and observed Officer Alford activate his overhead lights behind Mr. Murphy's vehicle. Officer Rauch stopped his vehicle behind Officer Alford's police car and began to talk with Officer Alford, but had to park his vehicle on the on the roadway because Officer Alford's car was blocking the entrance to the Shell gas station's parking lot.

Mr. Murphy observed the two officers talking and rolled down his window and attempted, but failed, to get the officers' attention. Mr. Murphy then opened his car door and began to speak to the officers. Officer Alford drew his weapon and ran toward Mr. Murphy and Officer Rauch also began to run toward Mr. Murphy's vehicle. As Officer Alford approached, Mr. Murphy shut his car door and put both hands on his steering wheel. Officer Alford pointed the gun at Mr. Murphy's head and said, "You never exit a vehicle when an IMPD officer pulls you over." Dkt. 76-3 at 17, 52:8–13. Mr. Murphy and Officer Alford spoke for approximately one minute before Officer Alford stated "this boy doesn't get it" and commanded Mr. Murphy to step out of his vehicle. Mr. Murphy opened the car door and put his left leg out of the vehicle.

Immediately, Officer Alford grabbed Mr. Murphy's left wrist and bicep and pulled him from the vehicle. Officer Rauch, who had been standing behind Officer Alford, grabbed Mr.

Murphy's right arm to assist Officer Alford and to prevent Mr. Murphy from landing on his face. Mr. Murphy recalls being dragged several feet away from his vehicle where he was pulled across the ground on his stomach. Officer Alford and Officer Rauch then attempted to place Mr. Murphy in handcuffs and may have placed a knee on top of Mr. Murphy to subdue him. Officer Alford secured Mr. Murphy's left hand, but Officer Rauch had difficulty cuffing Mr. Murphy's right hand. Mr. Murphy had a pre-existing right shoulder injury which made it difficult for him to get his right arm behind his back and he informed the officers that he could not move his arm due to a shoulder problem. Despite the difficulty, Officer Rauch was able to quickly secure Mr. Murphy's right hand in handcuffs. In the process of being taken down and handcuffed, Mr. Murphy suffered a left shoulder rotator cuff tear, which later required surgery.

After Mr. Murphy was handcuffed, the officers lifted him to a standing position. Officer Rauch observed that Mr. Murphy's knee was bleeding and asked if Mr. Murphy needed medical attention. Mr. Murphy said no, but Officer Rauch retrieved a medical kit from his vehicle and bandaged Mr. Murphy's knee. During a cursory search of Mr. Murphy's vehicle, Officer Alford observed two unopened cans of beer in the front seat of the vehicle. Officer Alford believed Mr. Murphy was intoxicated and called for a DUI specialist to administer field sobriety tests and a portable breath test ("PBT"). Ten minutes later, Officer Jack Rebolledo ("Officer Rebolledo") arrived and administered a field sobriety test and three PBTs. All results were negative for alcohol or signs of intoxication. When the tests were completed and results received, Mr. Murphy was uncuffed and he waited inside his vehicle for paperwork. Officer Alford issued Mr. Murphy a citation for failing to use his turn signal and told him he was free to leave. The total time of detention was less than thirty minutes.

Later that night, Mr. Murphy felt pain in his left shoulder, however, he did not seek medical attention until March 15, 2011. An MRI on March 22, 2011 revealed a tear in Mr. Murphy's left shoulder for which he had surgery on August 18, 2011.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

### A. Claims under 42 U.S.C. § 1983

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (internal quotation omitted). Qualified immunity gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). To overcome qualified immunity, a plaintiff must show both "(1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713. It is within the Court's discretion to grant immunity on the basis that the right was not clearly established without determining whether there was a violation in the first place. *Id*; *see Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

#### 1. Unreasonable Seizure and Excessive Force

Mr. Murphy claims that Officers Alford and Rauch committed an unreasonable seizure in violation of the Fourth Amendment when they detained him for suspicion of intoxication. Mr. Murphy concedes that the initial traffic stop was reasonable, but contends that "there was no reasonable suspicion that he had committed the crime of operating while intoxicated, especially <u>at the time</u> Officer Alford pointed a gun at his head, drug him out of his car and across the parking lot, and put him in handcuffs." Dkt. 80 at 11 (emphasis in original). Mr. Murphy also contends that these actions amount to an arrest without probable cause and excessive force. Because Mr. Murphy concedes the initial traffic stop was reasonable, the Court will only analyze

whether the officers had reasonable suspicion for the continued detention of Mr. Murphy for investigation and whether Mr. Murphy was arrested without probable cause.

A brief investigatory stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31 (1968). The Fourth Amendment requires "some minimal level of objective justification" for making an investigative stop. *INS v. Delgado*, 466 U.S. 210, 217 (1984). The level of suspicion required for an investigative stop is "obviously less demanding" than probable cause, *United States v. Sokolow*, 490 U.S. 1, 7 (1989), and is not readily reduced to a set of legal rules. Therefore, to evaluate the validity of a stop, courts consider the totality of the circumstances leading up to the stop viewed from the standpoint of an objectively reasonable police officer. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In short, the Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

In this case, Defendants rely on several facts observed by Officer Alford to establish reasonable suspicion. These facts include Officer Alford's observations of "[s]peeding, unsafe lane movement, unsafe turn from the middle lane to the westbound lane," Dkt. 76-1 at 4, 14:5–6, as well as Mr. Murphy initially stopping on the road, slowly rolling forward, then turning into the gas station parking lot "over the curb on the grassy area onto the sidewalk, and then coming to a stop in the gas station at a 45-degree angle to one of the parking spots." Dkt. 76-1 at 5, 17:6–10. Officer Alford asserts that when he observed Mr. Murphy's vehicle rolling forward, he believed from his observations and past experience that Mr. Murphy was an intoxicated driver. Officer Rauch testified that after Mr. Murphy stopped his vehicle, opened his car door and leaned out of his vehicle. Officer Alford then drew his weapon and approached the vehicle

yelling at Mr. Murphy and that once Mr. Murphy shut his car door, he holstered his weapon. According to Officer Rauch, Mr. Murphy was stammering and incoherent, and ignored Officer Alford's requests to exit the vehicle. When Mr. Murphy opened the car door and leaned out to exit, Officer Alford pulled Mr. Murphy out of the car, believing that Mr. Murphy was resisting, failing to follow commands, and he believed Mr. Murphy might be a risk to officer safety. Later, after Officer Alford and Officer Rauch subdued Mr. Murphy, Officer Alford asked Mr. Murphy if he had been drinking or was intoxicated. Mr. Murphy responded that he had drunk beer earlier in the day but he was not intoxicated. Additionally, Officer Alford observed two unopened cans of beer in Mr. Murphy's vehicle. At that point, Officer Alford called for a DUI specialist based allegedly because of Mr. Murphy's "driving behavior" and "him not listening to our commands." Dkt. 76-1 at 10, 47:3–5.

However, Mr. Murphy disputes Officer Alford's and Officer Rauch's versions of events. Mr. Murphy denies erratic driving and only concedes that he made a left-hand turn without signaling, or "at worst," that he "committed a series of minor traffic infractions." Dkt. 80 at 11. He specifically disputes Officer Alford's characterization of his actions once Officer Alford activated the overhead lights to pull Mr. Murphy over. In Mr. Murphy's version of events, once the overhead lights were activated, he slowed down his vehicle—but did not come to a stop—and chose to pull into the Shell gas station parking lot because it was a safer location than stopping on the roadway. He then attempted to pull into a parking spot but stopped mid-turn when Officer Alford sounded his siren and flashed a spotlight at him. Mr. Murphy denies that he drove onto the grass or over a curb, which Officer Rauch's testimony supports. Mr. Murphy admits that he opened his car door, but did so merely to get the officers' attention. Officer Alford then charged at him with a drawn weapon and Mr. Murphy immediately shut his car door

7

and put his hands on his steering wheel. He contends that he followed commands at all times and that Officer Alford appeared angry and hostile. When Mr. Murphy attempted to exit the vehicle as requested, Officer Alford pulled and drug him from his vehicle, taking him to the ground. At the point when Officer Alford pulled Mr. Murphy from his vehicle, Mr. Murphy contends that a valid investigatory stop had evolved to being unreasonable. Mr. Murphy denies that he did not follow commands to exit his vehicle and denies that he resisted the Officers, though he does admit that because of his prior injury, he had difficulty putting his right arm behind his back, and that Officer Rauch had to pull his right arm behind his back.

Mr. Murphy claims he was arrested without probable cause when Officer Alford pulled him from the vehicle and handcuffed him. "A *Terry* stop based on reasonable suspicion can ripen into a de facto arrest that must be based on probable cause if it continues too long or becomes unreasonably intrusive." *United States v. Bullocks*, 632 F.3d 1004, 1015 (7th Cir. 2011). "Stops too intrusive to be justified by suspicion under *Terry*, but short of custodial arrest, are reasonable when the degree of suspicion is adequate in light of the degree and duration of the restraint." *United States v. Chaidez*, 919 F.2d 1193, 1198 (7th Cir. 1990). And case law is clear that "police officers do not convert a *Terry* stop into a full custodial arrest just by drawing their weapon, or handcuffing the subject." *United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007) (citations omitted) (listing cases). What really matters is the manner in which Mr. Murphy was seized and what happened afterward. *See id.* In *Shoals*, police officers drew their weapons, ordered defendant to exit his house, and handcuffed the defendant. *Id.* The court stated that "these facts do not individually or collectively show that Shoals was arrested and not simply detained. It is pointless, of course, for Shoals to focus here on his acquiescence to the officers'

command that he exit the house; that just means he was seized—an intrusion that is necessarily present in every *Terry* stop." *Id.*

Mr. Murphy relies on *Reinhart v. State*, 930 N.E.2d 42 (Ind. Ct. App. 2010) to support his claim. In *Reinhart*, a police officer observed a vehicle that was driving under the speed limit, swerved in the road, and pulled into two driveways. The vehicle then pulled within ten feet of the police officer and the driver started yelling. *Id.* at 43–44. The police officer shined his spotlight on the vehicle and noticed a passenger. Fearing for his safety, the police officer ordered the vehicle to back up, which the driver did. *Id.* at 44. The police officer followed the vehicle to a better lit area, pulled it over, and called for backup. *Id.* After initiating a valid traffic stop, the police officer pulled his weapon and ordered the driver to exit the vehicle. *Id.* At gunpoint, the police officer ordered the driver to walk to the back of his vehicle, get to his knees, and keep his hands behind his head. *Id.* The police officer then ordered the driver to lie on his stomach with arms out to the side. Backup arrived approximately one and one-half minutes later and the driver was handcuffed. *Id.* Citing the Indiana standard for when an arrest occurs, the court held that "what may have begun as a *Terry* investigatory stop was quickly converted to an arrest requiring probable cause," because the manner of execution unreasonably infringed upon the Fourth Amendment. *Id.* at 47.

The Court believes this case is the type discussed in *Chaidez*, that is, a stop too intrusive to be justified by suspicion under *Terry*, but short of custodial arrest. Therefore, the Court must determine if Officer Alford's actions were supported by a reasonable degree of suspicion that is adequate in light of the degree and duration of the restraint. 919 F.2d at 1198. The Court finds that there is a disputed issue of fact precluding summary judgment on this issue. The undisputed facts consist of Mr. Murphy's speeding, making an un-signaled left turn, opening his car door,

the difficulty securing Mr. Murphy's right arm, and two unopened beer cans that were found in the vehicle after Mr. Murphy had been handcuffed. Mr. Murphy's resistance is disputed and the identification of the beer cans happened after Mr. Murphy was pulled from his vehicle and detained. Mr. Murphy's testimony is sufficient to create a question of material fact that the degree of intrusion was supported by an adequate level of suspicion that Mr. Murphy was intoxicated or dangerous, before he was pulled from his vehicle.

Moreover, "[P]olice are not entitled to point their guns at citizens when there is no hint of danger, [but] they are allowed to do so when there *is* reason to fear danger." *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) (emphasis added). And, officers may not use greater force than is reasonably necessary to make an arrest or seizure. *Abbott*, 705 F.3d at 724. "In judging the reasonableness of any particular use of force, [courts] consider factors such as the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to flee and evade arrest." *Id.* The undisputed facts establish that Mr. Murphy opened his car door, which a reasonable officer in the situation could interpret as a danger to officer safety. At that point, it was not excessive for Officer Alford to draw his weapon and point it at Mr. Murphy. However, once Officer Alford began speaking to Mr. Murphy, holstered his weapon, and gave the command for Mr. Murphy to exit his vehicle, the material facts are disputed such that summary judgment is precluded. The Court cannot find, when considering the facts most favorable to Mr. Murphy, that Officer Alford was justified in his use of force pulling Mr. Murphy from the vehicle. Officer Alford's motion for summary judgment on this claim is **DENIED**.

As for Officer Rauch, however, he did not effectuate the initial stop and acted as a backup officer to Officer Alford. Section 1983 liability requires personal responsibility. *Rascon*

*v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986).  And it requires intentional conduct.  *Chi. Housing Auth. v. Fed. Sec., Inc.*, 161 F.3d 485, 488 (7th Cir. 1998).  Officer Rauch did not draw his weapon, but he assisted Officer Alford in taking Mr. Murphy to the ground and is described as ensuring that Mr. Murphy did not fall on his face.  So while he played a role in the seizure, he did not intentionally violate Mr. Murphy's rights because he was not privy to the details of the situation, as was Officer Alford.  The Court therefore finds that the facts do not support a claim against Officer Rauch for unreasonable seizure, arrest without probable cause, or excessive force.  Therefore, Officer Rauch's motion for summary judgment on this claim is **GRANTED**.

        2.        **Clearly Established Right**

Officer Alford contends that his actions are protected by the doctrine of qualified immunity. Even though the Court has found a genuine issue of fact precluding summary judgment on whether Officer Alford violated Mr. Murphy's constitutional rights, if the Court finds that such a right was not "clearly established" at the time of the alleged misconduct, summary judgment could still be granted in favor of Officer Alford.  It is Mr. Murphy's burden to establish that the right was clearly established. A right is clearly established where "the contours of the right are sufficiently clear that the reasonable official would understand that what he is doing violates that right." *Abbott*, 705 F.3d at 725 (quotation omitted).  The right must be established "not as a broad proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012) (quotation and internal citation omitted).  Plaintiffs can show either a "clearly analogous case establishing a right to be free from the specific conduct at issue" or "conduct [that] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008).

11

Mr. Murphy again relies on *Reinhart* as a closely analogous case.[1] In contrast, Officer Alford argues that *Reinhart* is not similar enough to be considered a closely analogous case. To distinguish *Reinhart*, Officer Alford points to the undisputed fact that Mr. Murphy opened his car door and attempted to get the officers' attention after stopping his vehicle. In *Reinhart*, the court noted the defendant obediently exited his vehicle and calmly complied with all instructions. 930 N.E.2d at 47. The court's holding was largely based on the lack of articulable facts supporting an inference that the defendant in *Reinhart* could be a danger. Therefore, Officer Alford argues, there is an articulable fact in this case that would lead a reasonable officer to believe a detention was acceptable and possibly required to ensure officer safety during the encounter.

Mr. Murphy also argues that the constitutional violation was so egregious that it is unreasonable to believe such conduct would not violate clearly established rights. Mr. Murphy's sole argument for this is that Officer Alford's deposition includes a factual account that greatly differs from the facts presented to the Court in Defendants' statement of material facts not in dispute. Specifically, Officer Alford testified that Mr. Murphy exited his vehicle and approached Officer Alford and that Officer Alford drew his weapon and took Mr. Murphy to the ground in response. The designated evidence includes Officer Alford's deposition, where he did, in fact, testify that Mr. Murphy exited his vehicle and moved toward Officer Alford. Mr. Murphy and Officer Rauch both deny this account of events. The discrepancy between Defendants' statement

---

[1] Mr. Murphy also relies on *McAllister v. Price*, 615 F.3d 877 (7th Cir. 2010). However, *McAllister* is readily distinguishable. In that case, the plaintiff suffered a diabetic episode while driving that caused him to collide with two other vehicles. Witnesses to the accident called 911 and reported an accident involving a potentially intoxicated driver. *Id.* at 879. Upon arrival at the scene, a police officer approached the plaintiff who was still in his vehicle, "staring off into space and convulsing." *Id.* The plaintiff was unable to respond to the police officer's commands and questions. The officer then forcibly removed the plaintiff from his vehicle by throwing him to the ground and putting his knee on plaintiff's lower body "with his full body weight behind it." Plaintiff suffered a broken hip from the use of force. *Id.* The court found that the evidence supported the conclusion that the officer "ignored obvious signs of [plaintiff's] medical injury" and used force, "not because such force was necessary but because [the officer] was 'angry' with [plaintiff]." *Id.* at 884. This evidence was sufficient for a jury to conclude the officer had used excessive force. *Id.* The facts of the present case are not so clear. Mr. Murphy was not obviously in medical distress, nor has he produced evidence that Officer Alford ignored pertinent facts before using force. So while persuasive, the Court finds that *McAllister* is not a closely analogous case.

of facts not in dispute and Officer Alford's deposition in the designated evidence does concern the Court. Based on Mr. Murphy's and Officer Rauch's versions of events, the Court cannot determine whether Officer Alford simply made a "reasonable error," s*ee Chelios*, 520 F.3d at 691, in assessing the situation or whether he violated a clearly established right. Therefore, the Court finds that as applied to Officer Alford, the qualified immunity inquiry cannot be disentangled from disputed facts and likewise cannot be resolved without a trial. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Therefore, Officer Alford's claim of qualified immunity is **DENIED**.

### 3. Failure to Intervene

Next, Mr. Murphy claims that Officer Rauch failed to intervene when Officer Alford violated Mr. Murphy's constitutional rights. An officer who fails to intervene may be liable under 42 U.S.C. § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Officer Rauch argues, and the Court agrees, that the undisputed facts establish that he did not have a realistic opportunity to intervene to prevent the harm from occurring. Officer Rauch arrived on the scene as Officer Alford switched on his overhead lights. Officer Rauch was speaking with Officer Alford when Mr. Murphy opened his car door. Officer Rauch did not draw his weapon. Officer Rauch did not know Officer Alford intended to take Mr. Murphy to the ground, which indisputably happened very quickly. Furthermore, when Officer Alford began to pull Mr. Murphy from the car, Officer Rauch assisted in such a way that prevented Mr. Murphy from falling on his face. In that sense, his intervention possibly prevented Mr. Murphy

from suffering further harm. Therefore, the Court finds that Officer Rauch did not have reason to know a constitutional violation had occurred or was about to occur, and notwithstanding, did not have a realistic opportunity to intervene. Officer Rauch's motion for summary judgment on this claim is **GRANTED.**

**B.     State Law Claims**

Mr. Murphy asserts state law claims of battery and false arrest against the City. Governmental immunity under the Indiana Tort Claims Act does not extend to false arrest, nor does it apply to claims of battery from the use of excessive force unless the officer reasonably believed that such force was necessary to effect lawful arrest. In *Row v. Holt*, 864 N.E.2d 1011 (Ind. 2007), the Indiana Supreme Court explained that a false arrest requires the absence of probable cause. Above, the Court found that Mr. Murphy's detention fell somewhere between an investigatory stop and a custodial arrest; however, he was not arrested. Mr. Murphy cannot entertain a claim for false arrest. However, there are disputed issues of material fact as to whether Officer Alford reasonably believed the force used was reasonable under the circumstances, which precludes summary judgment on Mr. Murphy's battery claim. *See Wilson v. Isaacs*, 929 N.E.2d 200 (Ind. 2010). Therefore, the City's motion for summary judgment on false arrest is **GRANTED**, but its motion on battery is **DENIED**.

## IV. <u>CONCLUSION</u>

Accordingly, the Court makes the following rulings on Defendants' Motion for Summary Judgment (Dkt. 74): Officer Rauch's motion for summary judgment on Mr. Murphy's 42 U.S.C. § 1983 claims against him—including unreasonable seizure, excessive force, and failure to intervene—is **GRANTED** and he is dismissed from this action. Officer Alford's motion for summary judgment on Mr. Murphy's 42 U.S.C. § 1983 claims against him—including

unreasonable seizure and excessive force—is **DENIED**. The City's motion for summary judgment on Mr. Murphy's claim of false arrest is **GRANTED**; and the City's motion for summary judgment on Mr. Murphy's claim of battery is **DENIED**.

Trial of this matter remains set for **Monday, July 15, 2013**.

**SO ORDERED**.

Date: 06/17/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert D. King, Jr.
LAW OFFICE OF ROBERT D. KING, JR, P.C.
rking@robertkinglaw.com

David Ray Thompson
LAW OFFICE OF ROBERT D. KING, JR., P.C.
dthompson@robertkinglaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
awill@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com